IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Jimmy H. Causey, | ) | Case No.: 4:22-cv-01475-JD-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Charles Williams, Ms. Davis, Ms. Cloud, | ) | |
| Ms. Lim, Susan Duffy, Ms. Lee, David | ) | |
| Burzinski, Coata Kimbrell, John Palmer, | ) | |
| Joel Anderson, and Kayla Shervey, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court with the Report and Recommendation of United States Magistrate Judge Thomas E. Rogers, III ("Report and Recommendation" or "Report") (DE 114), made under 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2) of the District of South Carolina.[1] Jimmy H. Causey ("Causey" or "Plaintiff"), proceeding *pro se* and *in forma pauperis*, brought this action under 42 U.S.C. § 1983, alleging violations under the First and Eighth Amendments of the United States Constitution, claiming malnutrition resulting in weight loss, retaliation, conditions of confinement, and long-term solitary confinement. (DE 12.) Defendants Charles Williams, Ms. Davis, Ms. Cloud, Ms. Lim, Susan Duffy, Ms. Lee, David Burzinski, Coata Kimbrell, John Palmer, Joel Anderson, and Kayla Shervey (collectively "Defendants") move for summary judgment (DE 94) on all of Plaintiff's claims. Under Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Court advised Plaintiff of the summary judgment and dismissal procedures

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

1

and the possible consequences if he failed to respond adequately to the motion. (DE 95, DE 105.) Plaintiff filed a Response in opposition on December 5, 2023. (DE 111.) Defendants filed a reply on December 12, 2023. (DE 112.)

On December 20, 2023, the Magistrate Judge issued the Report (DE 114), recommending that Defendants' Motion for Summary Judgment (DE 94) be granted. The Court adopts the Report and Recommendation as provided here for the reasons stated below.

## BACKGROUND

The Report and Recommendation set forth the relevant facts and legal standards, which this Court incorporates herein without a full recitation. In any event, the Court provides this summary as a brief background relating to the objections raised by Plaintiff.

Plaintiff lists several claims in his Amended Complaint. (DE 12.) In Claim # 1, he alleges that he is suffering from high cholesterol, digestive problems, and severe weight loss (thirty pounds) due to the extremely unhealthy foods being served at Perry Correctional Institution ("Perry"). (DE 12, pp. 11-13.) He alleges that the only healthy proteins they receive are tuna two to three times a month and chicken once a week. (Id.) Otherwise, he alleges, they receive "mystery meat," bologna, and "wiennies," which he claims are high in fat, cholesterol, and sodium and contain little protein. He alleges they do not serve fruit and only one vegetable at lunch and dinner. (Id.) He alleges that Defendant Davis is the head dietician at SCDC and creates the master menu. He also alleges that he receives spoiled milk 3-4 times a week and often receives no beverage. (Id.) He alleges that Deputy Warden Harouff once took a picture of the clumps of spoiled milk served to inmates. (Id.) Plaintiff also complains that the portion sizes they receive are insufficient. He alleges that on weekends, they receive only two meals a day instead of three. (Id.) He asserts that he was prescribed Ensure on March 2, 2021, due to his extreme weight loss. (Id.)

Ryshema Davis, SCDC Nutritionist, alleges that all meals served to SCDC inmates are designed to provide the daily Recommended Dietary Allowances set forth in the Nutritional Standards promulgated by the Nutrition Board of the National Research Council at the National Academy of Sciences. (DE 94-7 ¶¶ 2, 5.) Davis helps create menus that meet the dietary needs of every inmate at SCDC, depending on their particular needs. (DE 94-7, ¶¶ 6-8.) Defendants argue there is no evidence that the meals planned and provided to Plaintiff were nutritionally deficient or inadequate to comply with nationally recognized nutritional standards.

Defendants also assert that Plaintiff has presented no evidence of spoiled milk. Deputy Warden Harouff denies taking a photograph of clumps of spoiled milk as claimed by Plaintiff. (DE 94-8 ¶ 16.) Further, SCDC Food Service Specialist Ella Lim provides in her interrogatory responses that milk is ordered weekly, and if any milk is questionable, it is discarded. (DE 94-9, Resp. 14, 15.) The milk contains a date stamp as to when it was packaged, and it typically lasts ten to fourteen days, by which time it has been consumed. (Id.)

As for Plaintiff's allegations of weight loss, his medical records indicate that on September 17, 2019, shortly after he arrived at Perry, Plaintiff weighed 160 pounds. (DE 94-10.) As of July 21, 2022, Plaintiff weighed 180 pounds. (Id.) At his lowest weight, he weighed 146 pounds. (Id.) The records reveal that medical personnel noted weight loss issues before Plaintiff's arrival at Perry. (Id.) The records also show weight fluctuations by Plaintiff during his time at Perry. (Id.) The medical department at Perry prescribed Ensure to Plaintiff when his body mass index (BMI) reached levels to justify that his diet be supplemented with Ensure. (Id.) The medical records also reflect that Plaintiff was taken off Ensure when his BMI reached normal levels. (Id.) Plaintiff's medical records establish that his body weight was being actively monitored and tracked by SCDC personnel. (Id.)

In Claim # 2, Plaintiff challenges his living conditions because he is in the Perry Restricted Housing Unit (RHU).[2] He alleges he receives recreation one-to-two times per month. (DE 12, pp. 14-15.) Deputy Warden Harouff explains in his affidavit that some of the conditions described by Plaintiff result from his placement in RHU due to his disciplinary history, two prior escapes, and known efforts to make more escape plans. (DE 94-8, ¶¶ 4-5.) Harouff states that Plaintiff was afforded outside recreation time when weather permitted and when there was sufficient staff to monitor the RHU inmates outside. (Id. ¶ 8, Att. B.)

In Claim # 3, Plaintiff alleges that Defendants have retaliated against him for filing a previous action in May 2020 alleging excessive force against several officers and the Deputy Warden at Perry. (DE 12, pp. 16-18.) He alleges Defendants Burzinski, Kimbrell, and Shervey searched his room or "toss" it two to three days a week by throwing his belongings around and confiscating law books and legal documents. (Id.) Plaintiff also alleges that Defendant Palmer was overheard stating that he would make sure Plaintiff had some type of disciplinary charge prior to his next classification review. (Id.) Plaintiff alleges that nine days prior to his next classification review, Defendant Burzinski confiscated an affidavit from Plaintiff's cell, and he was charged with having contraband. (Id.) Defendants argue that any disciplinary and/or classification actions taken against Plaintiff resulted from his actions and were not in retaliation for Plaintiff's previous lawsuit. Classification documents stated that the classification review board made its decisions based on Plaintiff's disciplinary history. (DE 94-13.) Likewise, SCDC's responses to Plaintiff's kiosk requests show that his custody reduction is based on two major disciplinary convictions after

---

[2] Plaintiff alleges that he has been in lock-up since July 2017 due to a "nonviolent escape." (DE 12, p. 14.) He alleges he has access to TVs in the hallways with no audio, haircuts, and shaves once every one and a half to two months, and gets one book per month. (Id.) He alleges he is not allowed to have pillows, pillowcases, combs, shampoo, or jackets. (Id.) He alleges there are no mirrors or beds in the cells, and they are forced to sleep on concrete slabs. (Id.) He also alleged they are exposed to insects, and their windows are covered with sheet metal. (Id.)

a prior review and that Plaintiff's custody level was appropriate based on previous offenses. (DE 94-14.)

## DISCUSSION

Plaintiff objects to the Report raising three main concerns: (1) Food, (2) Living Conditions, and (3) Retaliation. (DE 116.) These objections all relate to fact disputes in the record. However, objections to a report and recommendation must be specific to be actionable. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). "The Supreme Court has expressly upheld the validity of such a waiver rule, explaining that 'the filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- *that are at the heart of the parties' dispute*.'" Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (2005) (citing Thomas v. Arn, 474 U.S. 140 (1985) (emphasis added)). In the absence of specific objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

As for Plaintiff's objections about Food and Living conditions, to begin with, the Report ably and comprehensively outlines prison condition standards under the Eighth Amendment. As correctly noted in the Report, "the Constitution does not mandate comfortable prisons," rather, conditions that are "restrictive and even harsh . . . are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347-49 (1981). It is well established that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Wilson v. Seiter, 501 U.S. 294, 297 (1991). To sustain a living conditions claim,

a prisoner must show (1) "the deprivation alleged [was], objectively, 'sufficiently serious,'" meaning "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities,'"; and (2) subjectively, the "prison official [had] a 'sufficiently culpable state of mind,'" which "[i]n prison-conditions cases [] is one of 'deliberate indifference' to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994). The objective component "requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Raynor v. Pugh, 817 F. 3d 123, 127 (4th Cir. 2016) (quoting Helling v. McKinney, 509 U.S. 25, 36 (1993)) (emphasis in original)). The subjective component requires that "'the prison official must have had a 'criminal-law mens rea.'" Anderson v. Kingsley, 877 F.3d 539, 544 (4th Cir. 2017) (quoting Farmer, 511 U.S. at 836-37).

Plaintiff's Food objection centers on alleged fact disputes, which he believes are enough to defeat summary judgment. The Court disagrees. Even if the Court accepts Plaintiff's allegation as true, his claim that he was provided sour milk, suffered weight loss, and was fed small portions does not satisfy an Eighth Amendment violation. In fact, Plaintiff's objection states, "at no time did I ever allege that they were deliberately indifferent to my health and safety, I alleged that they were deliberately indifferent to my complaints regarding (FOOD) insufficient portions, sour milk[,] and nutritionally def[i]cient food." (DE 116, p. 4.) The record shows that Defendants treated his alleged food deficiencies and mitigated his weight loss, and so Defendants were not deliberately indifferent to Plaintiff's nutritional or medical needs. Accordingly, Plaintiff's Food objection is overruled.

As for Plaintiff's Living Conditions objection, Plaintiff focuses on his recreation time and not the other matters asserted in his complaint or response to the summary judgment motion. That

said, the Court will only address his insufficient recreation time claim.³ Plaintiff objects to the Report which dismissed this claim "[b]ecause a penological reason exists for Plaintiff's at-times, limited outdoor exercise," (DE 114, p. 13). Plaintiff argues that being classified "High Risk" is unrelated to how often he gets recreation, in part because "all RHU inmates are being denied recreation." (DE 116, p. 5.) He further claims that he was not told that he was being denied frequent recreation because of his previous attempted or threatened escapes. (Id.)

However, as noted in the Report, to determine whether these restrictions, "pertinent to the right of exercise," amount to an Eighth Amendment violation, the Court must look at the totality of the circumstances, including the "the overall duration of incarceration, the length of time for which prisoners are locked in their cells each day, ... and the practical opportunities for the institution to provide prisoners with increased exercise opportunities . . . ." Mitchell v. Rice, 954 F.2d 187, 191 (4th Cir. 1992). Furthermore, "a legitimate penological justification can support prolonged detention of an inmate in segregated or solitary confinement . . . even though such

---

³ Although Plaintiff contends the Report does not address his mental health claim because of long-term solitary confinement and conditions of confinement, the Court disagrees. The Report ably and comprehensively addresses this claim. The Report states,

> Plaintiff's other complaints regarding his living conditions likewise fail to survive summary judgment because none of them amount to the depravation of a basic human need nor can Plaintiff show that he suffered an injury as a result of these conditions. As stated above, his allegations include no audio on the television, no reading materials, insufficient number of haircuts, lack of pillows, pillowcases, combs, shampoo, and jacket, removal of mirrors, laundry hooks, and beds, and sleeping on a six-inch pad on the floor and being exposed to bugs. The conditions of confinement complained of by Plaintiff amount to nothing more than a 'routine discomfort [that] is part of the penalty that criminal offenders pay for their offenses against society.' Strickler v. Waters, 989 F.2d 1375, 1380 (4th Cir. 1993[)]. The Eighth Amendment 'does not mandate comfortable prisons.' Rhodes v. Chapman, 452 U.S. at 349, 101 S.Ct. at 2400. 'To the extent ... conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.' . . . Plaintiff fails to present evidence of any physical or emotional injury he has suffered as a result of these conditions. Therefore, summary judgment is appropriate on the remainder of Plaintiff's conditions of confinement claims.

(DE 114, pp. 13-14.) Accordingly, this matter has been addressed in the Report, and therefore, Plaintiff's request that a Report be issued on this claim is denied.

conditions create an objective risk of serious emotional and psychological harm." Porter v. Clarke, 923 F.3d 348, 362-63 (4th Cir. 2019). Defendants in this case assert that Plaintiff's limited outdoor exercise time had a legitimate penological justification given Plaintiff's history of two successful escapes from other prisons within SCDC and his repeated threats to escape again. An inmate's previous escapes or attempts to escape *may* provide a legitimate penological justification for denying or limiting an inmate's outside exercise, for example for the safety and security of the prison. See, e.g., Bass v. Perrin, 170 F.3d 1315 (11th Cir. 1999). Further, Plaintiff fails to establish how *decreased* outside recreation time is "sufficiently serious," resulting "in the denial of 'the minimal civilized measure of life's necessities.'" Farmer v. Brennan, 511 U.S. at 834. Instead, the record shows he was afforded some outside recreation time when weather permitted and when there was sufficient staff to monitor the RHU inmates outside. (See DE 94-8 ¶ 8.) Plaintiff's objection is, therefore, overruled.

As for Plaintiff's Retaliation objection, Plaintiff contends the Report disregards evidence about Defendant Coata Kimbrell being a party to a previous lawsuit with Plaintiff (4:20-cv-1724-JD-TER) and that the harassment did not start until after he filed the previous lawsuit. (DE 116, p. 8.) As correctly stated in the Report, "if an inmate exercises his First Amendment right when he files a prison grievance, retaliation against him for doing so is unconstitutional." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 540 (4th Cir. 2017). "To state a colorable First Amendment retaliation claim, a plaintiff 'must allege that (1) [ ]he engaged in protected First Amendment activity, (2) the defendant[ ] took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendant['s] conduct.'" Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020) (citation omitted). "In order to establish this causal connection, a plaintiff in a retaliation claim must show, at the very least, that

8

the defendant was aware of [his] engaging in protected activity." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 501 (4th Cir. 2005) (citation omitted). "Every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct. . . . Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). Bare or conclusory assertions of retaliation are insufficient to establish a retaliation claim. See id. at 74.

The Court agrees that Defendant Kimbrell was named in a previous lawsuit with Plaintiff. And so, Defendant Kimbrell was aware Plaintiff was engaging in protected activity. Thus, Plaintiff's objection is sustained, but this decision does not control whether summary judgment should be defeated. "'Knowledge alone, however, does not establish a causal connection' between the protected activity and the adverse action." Constantine, 411 F.3d at 501. An "inmate [must] show[] that protected conduct was a substantial or motivating factor in a prison guard's decision to take adverse action." Martin v. Duffy, 977 F.3d at 300. "There must also be some degree of temporal proximity to suggest a causal connection. 'A lengthy time lapse between the [public official's] becoming aware of the protected activity and the alleged adverse . . . action . . . negates any inference that a causal connection exists between the two.'" Constantine, 411 F.3d at 501. The Court notes that Plaintiff filed his previous lawsuit on May 1, 2020. See 4:20-cv-01724-JD. In addition, Plaintiff alleges Defendants Burzinski, Kimbrell, and Shervey would search his room or "toss" it two to three days a week by throwing his belongings around and confiscating law books and legal documents. (DE 111, p. 28.) Plaintiff also alleges that Palmer was overheard admitting that he would come up with some disciplinary charge for Plaintiff prior to his next classification hearing and, nine days prior to his classification review on April 5, 2022, he was charged with

9

having contraband. These alleged acts, if true, lack the necessary temporal proximity to suggest a causal connection. Plaintiff has thus presented no evidence that the lawsuit was a substantial or motivating factor in Defendants' actions. Thus, Plaintiff's objection is overruled.

Accordingly, after a thorough review of the Report and Recommendation and the record, the Court adopts the Report and Recommendation and incorporates it here.

Therefore, it is **ORDERED** that the Defendants' Motion for Summary Judgment (DE 94) is granted, and Plaintiff's case is dismissed.

**IT IS SO ORDERED.**

*Joseph Dawson, III*
Joseph Dawson, III
United States District Judge

Florence, South Carolina
February 12, 2024

## NOTICE OF RIGHT TO APPEAL

Plaintiff is hereby notified that he has the right to appeal this order within thirty (30) days from the date hereof, under Rules 3 and 4 of the Federal Rules of Appellate Procedure.